1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

8
9
10
11
12
13

| | |
|---|---|
| **PAUL JARRETT LOPEZ,** ) | **1:11-CV-466  AWI JLT** |
| ) | |
| **Plaintiff**, ) | |
| ) | **ORDER ON MOTION TO** |
| **v.** ) | **DISQUALIFY DEFENSE** |
| ) | **ATTORNEY** |
| **California Highway Patrol Officer F.** ) | |
| **BANUELOS (18068), et. al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

14

15      This case arises from an encounter between Plaintiff Paul Lopez ("Lopez") and two

16  California Highway Patrol Officers.  On May 27, 2013, Lopez's counsel Jorge Gonzalez

17  ("Gonzalez") filed a motion to disqualify defense counsel Kevin Reager ("Reager") for an

18  alleged violation of Rule 5-100(A) ("Rule 5-100") of the California Rules of Professional

19  Conduct.  The Court held a hearing on this motion and ordered the parties to submit additional

20  briefing.  The additional has now been received.  For the reasons that follow, the motion to

21  disqualify will be denied in part and granted in part.

22

23                              **BACKGROUND**

24      The Court held a hearing on May 20, 2013, in which it ruled on the parties' motions in

25  limine.  On May 22, 2013, Reager sent an e-mail to Gonzalez.  The first paragraph of the e-mail

26  indicates that Reager does not believe that there will be a problem authenticating certain

27  documents.  See Gonzalez Dec. Ex. A.  Reager's e-mail continues:

28      You know, we could just get real and admit that this case is not going to trial.
        CHP is no longer willing to give Mr. Lopez a waiver of fees or costs but I would

recommend they accept his surrender if he agreed to pay $10,000 or so to reimburse them for some of the expense. *If he sets foots in California, I bet he never leaves as there is a very real chance he will be arrested.  We do intend to have both federal and state law enforcement present during the trial.*  If we have to continue preparing for trial, CHP will not let him out without full payment of fees and costs.  They have authorized me to hire an investigator and starting pinning down all of his assets and income.  You could just save us the time and limit Mr. Lopez's exposure.

Call me tomorrow if you want to discuss it. . . .

Id. (emphasis added).

On May 27, 2013, Reager sent Gonzalez an e-mail in reply to the motion to disqualify.

See Reager Dec. Ex. B.  After expressing disappointment and surprise at the motion, Reager

stated in pertinent part:

I did not threaten to have your client arrested.  I said that federal and state law enforcement will be present.  U.S. Marshalls are always present in federal court and CHP will obviously have people in the courtroom.  Your client and his friends are going to take the stand and swear under penalty of perjury that they are drug users, a crime under both state and federal law.  Even Mr. Lopez is going to testify that he smokes pot for "medicinal" reasons.  Even if true, smoking pot is a federal crime with or without a "recommendation" from a doctor.  I do not know for sure but if your client was on probation for his plea on resisting arrest, he would not be allowed to smoke pot, even with a "recommendation," so that would be a violation.  He was also a cocaine user, another state and federal crime.  Based on these facts, I appropriately told you that if your client sets foot in California and testifies as expected, he is subject to arrest by both federal and state authorities.  That is a fact and observation that I provided to you so that you could advise and protect your client.  I in no way said that I would have him arrested or that I would request that any law enforcement officer take action.  It [is] his anticipated testimony before law enforcement that may lead them to take action.  That is all.

Id.

*Declarations by Plaintiff's Counsel*

Gonzalez admitted that he first thought that the e-mail was a joke.  See Doc. No. 48 at ¶

4.  However, after considering the e-mail for a couple of days, Gonzalez came to a different

conclusion.  See id.  Gonzalez declares that he interprets the above language to be a threat of

arrest if Lopez does not agree to dismiss his case, and that the e-mail is intended to be an act of

intimidation that is meant to cause Lopez misgivings about his case and Gonzalez's

representation.  See Doc. No. 49-1 at ¶ 6.  Gonzalez also declares that Lopez was very concerned

and repeatedly asked for what could he be arrested.  See id. at ¶ 7.  Gonzalez declares that he

does not have confidence that Reager's continued presence will ensure fairness in these

proceedings.  See id. at ¶ 8.

daw                                    2

1          _Declaration by Defense Counsel_

2          As to the May 22 e-mail, Reager declares that, although he now appreciates the severity

3   of Gonzalez's concerns, he did not intend to make any threat and he apologizes to Lopez and

4   Gonzalez.  See Doc. No. 52 at ¶ 2.  Reager also declares that, although Gonzales's declaration

5   states that the e-mail was sent on May 24, the e-mail itself shows that it was sent on May 22,

6   which means that Gonzalez had the 23rd and the 24th to contact him over what the e-mail meant.

7   See id. at ¶ 4.  Reager declares that he is not a law enforcement officer and does not prosecute

8   any type of criminal or administrative actions.  See id. at ¶ 5.  Reager declares that he in no way

9   intended to imply that he would participate in initiating any legal action or request that anyone

10  else take legal action against Lopez.  See id.  Reager states that his "comments were intended as

11  good natured, chiding another attorney with whom I had had a cordial and friendly working

12  relationship over the course of two years."  Id.  Reager declares that if he had thought that his

13  comments would be perceived as threatening or malicious that he would not have made them,

14  that he should have put "lol" (laugh out loud) after the comments, he should have never have

15  phrased his comments the way he did so that there would be no misunderstanding, and that he

16  used poor judgment.  See id.  Reager declares that he did not intend Gonzalez to take the

17  comments "unfiltered" to Lopez.  See id.

18         As to the May 27 e-mail, Reager declares that he sent it to assure Gonzalez that he would

19  never solicit law enforcement or anyone else to take legal action against Lopez and that he

20  comments were meant as an observation that Lopez and his friends would be testifying to illegal

21  drug use.  See id. at ¶ 9.  Reager declares that this testimony, in the presence of law enforcement,

22  could result in officers taking some action on their own accord.  See id.  Reager declares that

23  comments were made in conjunction with production of medical records and other evidence that

24  verified drug use.  See id.  Reager states that he did not think that Gonzalez was previously aware

25  of this evidence.  See id.  Reager states that he brought this to the attention of Gonzalez as a

26  solicitation to revisit settlement and to give Gonzalez the opportunity to advise Lopez in

27  whatever way he saw fit.  See id.  Reager declares that he removed the chidding comments from

28  the May 27 e-mail that had been present in the May 22 e-mail.  See id.

daw                                    3

1    **PLAINTIFF'S MOTION**

2    *Plaintiff's Argument*

3        Lopez argues that the May 22 e-mail is an attempt to intimidate him and Gonzalez.  The

4    e-mail is an effort to obtain a dismissal or to cause apprehension and fear that the continued

5    prosecution of this case will result in Lopez's arrest.  The e-mail violates Rule 5-100(a), which

6    prohibits threatening criminal, administrative, or disciplinary charges in a civil dispute.  The rule

7    is intended to promote open access to civil courts without fear of criminal process.  Although the

8    e-mail uses the phrase "I bet," a threat need not be expressly stated and may instead be implied

9    from the circumstances.  The e-mail also implicates 18 U.S.C. § 1512 and Lopez's First

10   Amendment right to access of the courts.  Lopez argues that Reager and the entire California

11   Attorney General's Office should be dismissed.

12       In reply, Lopez argues that Reager's second e-mail undercuts his position that the first e-

13   mail was a joke or merely "chiding" language.  The second e-mail attempts to explain that there

14   is a possibility that Lopez could get arrested because he will have to testify to alcohol, marijuana,

15   and cocaine consumption on the night in question, and he was under probation on the night in

16   question.  Reager explained that this possibility of arrest is a potential weakness, and pointing out

17   the potential weakness was a solicitation for further settlement.  Therefore, inclusion was

18   purposeful and not indicative of a joke.  Moreover, the language of the original e-mail was not an

19   invitation for further settlement discussion.  Rather, it was a clear and unequivocal demand for

20   Lopez to dismiss his case and pay defendants $10,000.  Reager's e-mail is a threat that harms the

21   integrity of the federal court system and is a conscious and willful act.  Lopez argues that Reager

22   should be disqualified and suffer monetary sanctions.

23   *Defendants' Opposition*

24       Defendants argues that Reager did not say that he was going to go to any judicial or

25   administrative body and press criminal charges.  Rather, he merely pointed out that Lopez and his

26   friends would be confessing to crimes on the witness stand, irrespective of whether an officer

27   chooses to act on the testimony.  By using the term "I bet," Defendant argues that Reager is

28   making an observation, not a threat.  Further, Rule 5-100 does not address all types of threats,

daw                                          4

rather it is limited to threats to present criminal charges.  While the May 22 e-mail refers to the possibility that Lopez could be arrested, Reager never threatened to present charges.  That a peace officer may utilize his own authority and act on testimony has nothing to do with Reager.  Defendants also argue that there is no authority cited that a party in a civil lawsuit can recuse opposing counsel based on inappropriate comments made in the context of settlement discussions.  Finally, the Officer Banuelos has the right to counsel of his choosing.

In reply, Defendants argue first that, although courts have the inherent power to disqualify an attorney in three different circumstances, none of those circumstances are present here.  Reager had no impermissible contact with Lopez, there is no "prior client" conflict between Reager and Lopez, and Reager is not a potential trial witness.  Lopez has presented no authority that authorizes disqualification based on an ethical violation.  Second, Lopez does not have standing to request the disqualification of Reager because Lopez has not suffered an injury in fact from Reager's actions.  A generalized interest in integrity in the legal system is insufficient.  Third, Reager did not violate Rule 5-100 because the e-mail did not threaten to present criminal charges.  Reminding Gonzalez of the risks that his client faces while testifying to criminal activity in the presence of law enforcement is not conduct that is envisioned by Rule 5-100.  Finally, Gonzalez should be sanctioned under 28 U.S.C. § 1927 for bringing this motion as an improper trial tactic.

*Legal Standards*

1.   Disqualification

Courts have the inherent power to disqualify counsel because of an ethical violation.  Crenshaw v. Mony Life Ins. Co., 318 F.Supp.2d 1015, 1020 (S.D. Cal. 2004); Visa U.S.A., Inc. v. First Data Corp., 241 F.Supp.2d 1100, 1103 (N.D. Cal. 2003).  However, disqualification is a drastic measure that is disfavored.  Crenshaw, 318 F.Supp.2d at 1020; Visa, 241 F.Supp.2d at 1104.  Motions to disqualify counsel are decided under California law.  In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000); Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Co., 913 F.Supp.2d 900, 906 (CD. Cal. 2012); Hitachi, Ltd. v. Tatung Co., 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006).  "[D]isqualification motions involve a conflict between the clients'

right to counsel of their choice and the need to maintain ethical standards of professional

responsibility," but the "paramount concern" is the preservation of the public's trust in the

scrupulous administration of justice and the integrity of the bar.  People ex rel. Dep't of Corps. v.

SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 1145 (1999).  "Because of the potential for

abuse, disqualification motions should be subjected to particularly strict judicial scrutiny."  Optyl

Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985); see SpeeDee, 20

Cal.4th at 1144.  Depending on the circumstances, courts should consider *inter alia* "a client's

right to chosen counsel, an attorney's interest in representing a client, the financial burden on a

client to replace disqualified counsel, and the possibility [that] tactical abuse underlies the

motion."  Id. at 1144-45; Kirk v. First Am. Title Ins. Co., 183 Cal.App.4th 776, 792 (2010).  Not

every violation of a professional rule automatically compels the disqualification of counsel.  See

W.T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d Cir. 1976); Crenshaw, 318 F.Supp.2d at 1020;

Hetos Investments, Ltd. v. Kurtin, 110 Cal.App.4th 36, 47 (2003); Gregori v. Bank of Am., 207

Cal.App.3d 291, 303 (1989).  Courts should consider the ends that the disciplinary rule is

designed to serve.  See United States v. Miller, 624 F.2d 1198, 1201 (3rd Cir. 1980); cf.

McMillan v. Shadow Ridge at Oak Park Homeowner's Assn., 165 Cal.App.4th 960, 967 (2008)

(considering the purpose of California Rule of Professional Conduct 2-100 in resolving motion to

disqualify).  Because punishment for violations of the rules of professional conduct is the

purview of the state bar, the court's goal is not to impose a penalty against an attorney, rather the

goal is to fashion a remedy for whatever improper effect the attorney's misconduct has had in the

case.  HTC Corp. v. Technology Props. Ltd., 715 F.Supp.2d 968, 973 (N.D. Cal. 2010); San

Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc., 213 Cal.App.4th 1212, 1231

(2013); McMillan, 165 Cal.App.4th at 968.  Courts have discretion in fashioning remedies other

than disqualification for violations of professional rules.  See UMG Recordings, Inc. v. Myspace,

Inc., 526 F.Supp.2d 1046, 1062-63 (C.D. Cal. 2007); Neal v. Health Net, Inc., 100 Cal.App.4th

831, 844 (2002).  Courts may disqualify an attorney when it has been satisfactorily established

that the attorney has acquired an unfair advantage that undermines the integrity of the judicial

process and will have a continuing effect on the proceedings before the court.  See Huston v.

1    Imperial Credit Commer. Mortg. Inv. Corp., 179 F.Supp.2d 1157, 1168 (C.D. Cal. 2001); Koo v.

2    Rubio's Restaurants, Inc., 109 Cal.App.4th 719, 734 (2003); Gregori, 207 Cal.App.3d at 300.

3         2.    Rule of Professional Conduct 5-100

4         Rule 5-100 reads in pertinent part:  "A member shall not threaten to present criminal,

5    administrative, or disciplinary charges to obtain an advantage in a civil dispute."  Cal. R. Prof.

6    Cond. 5-100(A).  The term "civil dispute" refers to "a controversy or potential controversy over

7    the rights and duties of two or more parties under civil law, whether or not an action has been

8    commenced . . . ."  Cal. R. Prof. Cond. 5-100(C).  Rule 5-100 "seeks to discourage the collateral

9    use, or threat of use, of criminal, administrative or disciplinary proceedings to exert leverage in

10   the settlement of civil disputes.  The rule promotes the public policy of allowing free and open

11   access to civil courts without fear that the criminal or administrative process will be used to

12   coerce the resolution of private civil controversies."  State Bar of Cal. Standing Comm. on Prof'l

13   Responsibility & Conduct, Formal Opinion No. 1983-73 ("Formal Opinion 1983-73").[1]

14   "Threatening to use, or using the criminal process to coerce adjustment of private civil claims or

15   controversies is a subversion of [the civil] process; further, the person against whom the criminal

16   process is so misused may be deterred from asserting its legal rights and thus the usefulness of

17   the civil process . . . is impaired."  Id. at n.3.  A threat need not be expressly stated, but may be

18   inferred from the context and circumstances in which it is made.  See id.; Crane v. State Bar of

19   Cal., 30 Cal.3d 117, 123 (1981); Lindenbaum v. State Bar of Cal., 26 Cal.2d 565, 569-70 (1945).

20        3.    Local Rules of the Eastern District of California

21        Local Rule 180 addresses standards of professional conduct that attorneys in the Eastern

22

23        [1]This opinion actually discussed former Rule of Professional Conduct 7-104.  In pertinent part, Rule 7-104

24   read: "A member of the State Bar shall not threaten to present criminal, administrative, or disciplinary charges to
     obtain an advantage in a civil action . . . ."  Ross v. Creel Printing & Publishing Co., Inc., 100 Cal.App.4th 736, 746

25   n.5 (2000).  As can be seen, the "substance of former Rule 7-104 is now contained in Rule 5-100."  Id.  Therefore,
     reliance on authorities interpreting or applying former Rule 7-104 is appropriate.

26        Additionally, by Formal Opinion 1983-73's own terms, it is an advisory opinion only, and is not binding on
     the courts or the State Bar of California.  As such, the Court will consider Formal Opinions from the State Bar

27   Standing Committee on Professional Responsibility as advisory only.  See Alternative Systems, Inc. v. Carey, 67
     Cal.App.4th 1034, 1043-44 (1998) ("Although advisory only, the 1981 opinion generates analysis useful to this

28   appeal); Powers v. Dickson, Carlson, & Campillo, 54 Cal.App.4th 1102, 1113-14 (1997) (citing and considering
     Formal Opinions); see also Chambers v. Kay, 29 Cal.4th 142, 149 (2002) (noting that conclusion reached was
     consistent with a Formal Opinion).

daw                                         7

District of California are expected to meet.  In pertinent part, Local Rule 180 reads:

> Every member of the Bar of this Court . . . shall become familiar wiht and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions of any Court applicable thereto, which are hereby adopted as standards of professional conduct in this Court. . . .  No attorney admitted to practice before this Court shall engage in any conduct that degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice.

Local Rule 180(e).

Pursuant to Local Rule 110, a counsel's failure to comply with Local Rules "may be grounds for the imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."

Federal courts have the authority to issue sanctions for violation of their local rules. Zambrano v. Tustin, 885 F.2d 1473, 1480 (9th Cir. 1989).  However, no monetary penalty may be imposed for a violation of local rules unless the offending party has engaged in grossly negligent, reckless, or willful conduct.  Couveau v. American Airlines, Inc., 218 F.3d 1078, 1081 (9th Cir. 2000); Zambrano, 885 F.2d at 1480.  Unless an award of attorney's fees is the contemplated sanction, see Zambrano, 885 F.2d at 1481-82, a finding of bad faith is not required to sanction a party for violation of the local rules.  Washburn v. Morgado, 332 Fed. Appx. 380, 383 (9th Cir. 2009).

*Discussion*

1.      Disqualification of Attorney General's Office

At the hearing, the Court expressly asked about case or statutory law that would authorize the disqualification of the entire California Attorney General's Office.  The Court requested citation to authority because, considering the size and nature of the California Attorney General's Office, such relief would be extreme.  The California Attorney General's Office is not a private law firm, and, at the hearing on this matter, Reager explained that he alone was responsible for the May 22 e-mail.  See Doc. No. 60 at 9:19-21.  Lopez's reply did not address disqualifying the California Attorney General's Office in any way, but did reiterate the request to disqualify Reager.  Given Lopez's failure to cite relevant authority or to even mention this relief, disqualification of the California Attorney General's Office will be denied.

2.    Disqualification of Reager

As an initial matter, the Court is not convinced by Reager's argument about Lopez's standing.  Reager relies primarily on *Colyer v. Smith*, 50 F.Supp.2d 966 (C.D. Cal. 1999).  That case involved Colyer's attempt to enforce conflict of interest rules where the duties were owed by a law firm to one Watson, not to Colyer.  See id. at 972.  There was no personal right of Colyer that was actually burdened by the law firm's alleged conflict of interest.  See id. at 973.  The Central District denied the motion to disqualify due to a lack of standing.  See id.  The Court explained, "No rights Colyer seeks to vindicate by this litigation are implicated in Bell, Orrock's representation of defendants, and Colyer can suffer no harm from whatever attenuated conflict may exist between that firm and Watson."  Id.  Here, in contrast, Lopez is not seeking to vindicate the rights of third parties.  Rule 5-100 is directed towards all attorneys who are in the midst of a civil dispute and it curtails the attorney's conduct towards the opposing party.  The May 22 e-mail was sent during this litigation and was directed against Lopez through Gonzalez. The May 22 e-mail created misgivings and concern about what Lopez could be arrested for if he pursued this case.  See Gonzalez Dec. ¶ 7.  A chilling effect was felt by Lopez from the e-mail, which clearly implicates Lopez's ability to pursue his civil claims.  Therefore, Lopez has standing to bring this motion.

The Court is further not persuaded that disqualification should be denied simply because this case is not a typical disqualification matter.  Reager correctly identifies the three types of disqualification cases found in the *Rutter Group Practice Guide*, which are: (1) impermissible *ex parte* contact with agents of the opposing party; (2) conflicts of interest between present and former counsel; and (3) trial attorney as a witness in a jury trial.  See Jones, et al., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL TRIALS & EVIDENCE, 4:566 (The Rutter Group 2012).  However, this list does not purport to be an exclusive list.  Prior to listing these three types of cases, the *Practice Guide* states, "Motions to disqualify opposing counsel may be based on matters such as . . . ."  Id.  The *Practice Guide* does not state that disqualification "must be" based on one of three grounds, or that a motion to disqualify "can only be based" or on one of the three grounds, or that the list is exclusive. The *Practice Guide*'s use of the phrase "such

as" suggests non-exclusive examples.  It is true that no cases have been found in which an attorney has been disqualified for violating Rule 5-100.  However, no cases are cited that indicate motions to disqualify can only be based on one of three limited areas.  Motions to disqualify are very fact and circumstance specific, and the "paramount concern" is the preservation of the public's trust in the scrupulous administration of justice and the integrity of the bar.  SpeeDee, 19 Cal.4th at 1144.  Depending on the particular facts of a case, the only way to remedy the effects of a violation of Rule 5-100 may be disqualification.  Given the authority of the courts to disqualify, as well as the duty to preserve public trust, the Court cannot hold that motions to disqualify must be limited to improper *ex parte* communications, conflicts of interest, or attorneys as witnesses in jury trials.

Defendants also argue that the e-mail never threatens to submit charges for prosecution and that, by using the term "I bet," Reager was merely making an observation.  The Court is not convinced by these arguments.  There is no authority cited for the proposition that "magic words" must be used before Rule 5-100 is violated.  To the contrary, Formal Opinion No. 1983-73 recognizes that a threat need not be expressly stated, but can be inferred from the circumstances and the context.  See Formal Opinion 1983-73; see also Crane, 30 Cal.3d at 123.  A veiled threat is as improper as an express threat.  See Lindenbaum, 26 Cal. 2d at 569-70.  That Reager did not expressly say that he would cause the arrest of Lopez is not dispositive.

As for the substance of Rule 5-100, Lopez's motion rests largely on two lines from the May 22 e-mail: "If [Lopez] sets foots in California, I bet he never leaves as there is a very real chance he will be arrested.  We do intend to have both federal and state law enforcement present during the trial."  See Gonzalez Dec. Ex. A.  These lines follow a sentence that indicates CHP will not settle the case for costs, but would consider an agreed dismissal if Lopez paid $10,000. See id.

From an objective perspective, these lines constitute a violation of Rule 5-100.  The lines expressly state that there is a "very real chance" that Lopez will be arrested.  The "very real chance" language is given force by two other aspects of the sentences.  First, the phrase "I bet he never leaves," suggests a very long detention in California, including possible jail time.  Second,

the entire second sentence indicates an effort to ensure arrest.  The line, "We do intend to have both federal and state law enforcement present," indicates a plan to have additional law enforcement officers present during the trial itself.  There is no clarification in the May 22 e-mail as to any meaning other than a threat.  For example, there is nothing to indicate that Reager is referring to possible self-incriminating testimony by Lopez, or that Reager may be referring in part to what he perceives to be the nature of federal court security.  Instead, the impression that is given is that Reager and CHP will go out of their way to have additional law enforcement present in court and waiting for Lopez.  Further, the fact that the lines immediately follow a requested dismissal and the payment of $10,000 suggests that an arrest will not occur if Lopez agrees to drop his case and pay CHP.  In sum, the May 22 e-mail objectively reads as a threat for Lopez to drop his civil rights case or else face arrest and a lengthy detention in California.  Cf. Formal Opinion 1983-73.

Defendants maintain that in order to violate Rule 5-100, there must be an intent to threaten.  Plaintiff does not argue to the contrary or address the point.  Accordingly, the Court will accept that Rule 5-100 requires the intent to threaten for purposes of this motion.  In terms of intent, Reager argues that his statements were meant as a joke or to be chiding, as well as an attempt to revisit settlement, and that he was simply negligent.  Reager declared that, although he now appreciates the severity of Plaintiff's concerns, his statements were not meant to be malicious or threats, he did not mean to imply that he would participate in or cause a legal action to be prosecuted against Lopez, he used poor judgment, and that he meant for his comments to be good natured and chiding.  See Reager Dec. ¶¶ 2, 5, 6, 8.  Reager also declares that his comments were made as part of an e-mail string involving medical records and other exhibits that verified Lopez's drug use.[2]  See id. at ¶ 9.  Reager declares that his statements were based on the possibility that Lopez's testimony concerning drug use could be a basis for law enforcement to independently take action against Lopez.  See id.  At the hearing, Reager also emphasized that he did not intend to make a threat, he used poor judgment and made a poor choice of words, he was

---

[2]Lopez does not challenge the assertion that the medical records and exhibits that were the initial subject of the May 22 e-mail string indicate drug use.

1   careless and negligent, and that he called Gonzalez to apologize and assure him that Lopez has

2   nothing to fear from Reager. See Doc. No. 60. Reager's position regarding intent has some

3   support based on Gonzalez's initial reaction to the e-mail. Gonzalez initially thought that the

4   May 22 e-mail was a joke. See Doc. No. 48 at ¶ 4. Gonzalez had been working with Reager on

5   an amicable basis and did acknowledge that the two would say things in jest to each other. See

6   Doc. No. 60 at 4:13-17. Given the declarations of Reager and Gonzalez, as well as Reager's

7   representations at the hearing, it is not clear that Reager intended the May 22 e-mail to be a threat

8   of arrest and/or criminal prosecution.

9        If the Court were to find that Reager intended to make a threat and thereby violate Rule 5-

10  100, then the Court's task would be to identify what harm to the case had been caused by the

11  violation and then determine what remedy would alleviate that harm. See HTC, 715 F.Supp.2d

12  at 973; First Student, 213 Cal.App.4th at 1231; McMillan, 165 Cal.App.4th at 968. The Court

13  believes that it can alleviate any harm from the May 22 e-mail through use of the Local Rules

14  and without making a finding of intent.

15       Local Rule 180 incorporates the entirety of the Rules of Professional Conduct, which

16  obviously includes Rule 5-100. Local Rule 180 also prohibits an attorney from engaging in any

17  conduct that "interferes with the administration of justice." The May 22 e-mail does not

18  objectively read like a joke, it does not actually explain what weaknesses are present in the case

19  or the dangers of arrest that could flow from Lopez's testimony, and it does not clearly invite

20  "settlement" discussions despite a request for Gonzalez to call Reager. Even if Reager did not

21  intend for the May 22 e-mail to be a threat, it objectively reads as one; so much so that the Court

22  felt compelled to vacate the trial in order to resolve the issue. As indicated above, the e-mail also

23  had the effect of understandably causing Lopez anxiety about whether to attend his own trial.

24  The preventable and unnecessary loss of a trial date, and instilling the fear of arrest in a litigant,

25  interferes with the administration of justice. The May 22 e-mail sufficiently resembles a

26  violation of Rule 5-100 that it at a minimum constitutes grossly negligent conduct by Reager, and

27  violates Local Rule 180.

28       The harm that has occurred is anxiety to Lopez about Reager causing an arrest and the

1  loss of a trial date.  The Court believes it is possible to alleviate these harms without the need for

2  disqualification.  First, the Court will order the parties to meet and confer about new trial dates.

3  Once dates have been agreed upon, the Court will formally set a new date.  Second, the Court

4  will permit an additional motion in limine by Lopez regarding testimony and exhibits dealing

5  with drug use.  It is drug use, and more specifically exhibits that reflect drug use, that appears to

6  have been the basis of the May 22 e-mail.  Depending on the facts and circumstances of the case,

7  there may well be a Federal Rule of Evidence 403 problem.[3]  Third, the Court will issue a

8  prohibitory order against Reager.  Reager has declared in pertinent part: "I am a civil litigation

9  attorney assigned to the Tort & Condemnation Unit.  I in no way said or intended to imply that I

10  would participate in initiating any type of legal action or that I would request that anyone else

11  take any type of action against Mr. Lopez.  That is not now nor has it ever been my intention."

12  Reager Dec. ¶ 5.  Again, Reager also declared that he never intended to make a threat.  See id. at

13  ¶ 2.  A reasonable reading of this declaration is that Reager is stating under oath that he will not

14  cause criminal proceedings to be brought against Lopez in connection with trial in this matter.  A

15  Court order that Reager not cause the arrest of Lopez, or otherwise cause the initiation of

16  criminal proceedings against Lopez, based on either Lopez's pursuit of this case or Lopez's

17  testimony at this trial, will alleviate any fears that Lopez may have.  Such an order is perfectly

18  consistent with Reager's declaration and representations at oral argument.

19         3.    Monetary Sanctions

20       In what amounts to supplemental reply briefs, both parties for the first time request

21  monetary sanctions against the other.  The Court will not award the requested monetary sanctions

22  for several reasons.  First, the time to make a request for monetary sanctions is not in reply briefs.

23  Lopez did not request monetary sanctions in his initial motion, and Defendant did not file a

24  separate motion for monetary sanctions.  Second, Lopez's request for monetary sanctions is

25  inadequately briefed; it amounts to little more than three lines out of an 11 page brief.  Third,

26  Defendant's request for sanctions under 28 U.S.C. § 1927 is inappropriate because, although the

27

28      [3]The Court is not pre-judging this issue, nor is it holding that the evidence will be excluded.  The Court merely sees a potential Rule 403 problem.  If Lopez intends to seek exclusion of drug use related evidence, then his motion should include all bases for exclusion and be supported by citation to relevant and on point authority.

daw        13

proceedings have been multiplied, they have not been unreasonably and vexatiously multiplied. See Thomas v. Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010).  As discussed above, Lopez's motion is not unreasonable.


## **CONCLUSION**

Disqualification of a party's counsel is a drastic and disfavored measure.  The May 22 e-mail reads like a threat to arrest and objectively reads as a violation of Rule 5-100.  The May 22 e-mail caused the loss of a trial date and anxiety to Lopez about pursuing his case.  Irrespective of whether there was the requisite intent for a Rule 5-100 violation, the May 22 e-mail violated Local Rule 180 as it interfered with the administration of justice.  To alleviate the effects of this violation of Local Rule 180, it is appropriate to set a new trial date, to allow Lopez the opportunity to file a motion in limine on drug use, and to issue a prohibitory order that confirms Reager's representations and declarations that he will not cause the arrest or criminal prosecution of Lopez.  These remedies address the harm that has been caused and will permit this case to move forward without the need for disqualification.  Because the issue of monetary sanctions has been improperly raised and briefed, no monetary sanctions will be imposed at this time.


## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion to disqualify is granted in part and denied in part as follows:

    a.    Reager is not disqualified from this case;

    b.    The California Attorney General's Office is not disqualified from this case;

    c.    Reager is prohibited from causing the arrest of Lopez, or otherwise causing the initiation of criminal proceedings against Lopez, based on either Lopez's pursuit of this case or Lopez's testimony at this trial;

2.    The parties shall meet and confer within fourteen (14) calendar days of service of this order for the purpose of agreeing on dates for a new trial;

3.    Once the parties have agreed upon several dates, the parties will inform the Court's clerk,

1    Harold Nazaroff, of the agreed dates, at which time the Court will set a new court date by

2    order; and

3  4.    When the parties inform the Court of the agreed upon trial dates, the Plaintiff shall

4    expressly inform the Court whether he wishes to file a motion in limine regarding drug

5    use; if Plaintiff desires to file a motion in limine, the Court will then issue a briefing

6    schedule on that motion.

7  IT IS SO ORDERED.

8  Dated:    September 5, 2013

9                                                        SENIOR  DISTRICT  JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

daw

15