UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL JARRETT LOPEZ,<br><br>**Plaintiff**<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL OFFICERS F. BANUELOS and S. SANFORD, and DOES 1-10 inclusive,<br><br>**Defendants** | CASE NO. 1:11-CV-466 AWI JLT<br><br>**ORDER ON PLAINTIFF'S MOTION IN LIMINE REGARDING EVIDENCE OF DRUG TESTING AND DRUG USE** |

This is a civil rights case involving a confrontation between Plaintiff and two California Highway Patrol Officers. Trial in this matter is set for April 8, 2014. On March 3, 2014, Plaintiff filed an untimely motion in limine to exclude evidence of drug use and drug testing. Despite the untimely filing, the Court set a briefing schedule on the motion. All briefing has now been received. For the reasons that follow, the Court will grant in part and deny in part the motion.

*Plaintiff's Argument*

Plaintiff argues that, after the encounter with the officers in which he was tasered and injured, he was taken to a hospital. At the hospital, blood tests were done and the presence of cocaine was detected. This suggests that Plaintiff used cocaine some time prior to his arrest. Such evidence is not relevant to any issues that the jury will decide. The issue is whether Officer Banuelos's use of a Taser against Plaintiff was reasonable. The jury will be have to assess Banuelos's version of events, i.e. that he used the Taser to prevent an attack against his partner by Plaintiff, in determining reasonableness. The fact of cocaine use does not have tendency to make a fact at issue more or less probable. Further, Defendant did not designate any expert to explain

the effect of the cocaine in his system, nor to opine that the presence of cocaine in Plaintiff's blood would prove that Plaintiff was assaulting Officer Carrasco. There is no evidence regarding the possible effect of the cocaine in Plaintiff's blood, the amount of cocaine found, or when the cocaine was ingested. The jury would have to speculate on the possible effect of the presence of cocaine in Lopez's blood. Further, such evidence is highly prejudicial, and may cause the jury to conclude that Plaintiff is a bad person or undeserving of protection because he used drugs.

Plaintiff also argues that evidence regarding witness Leal's marijuana use is irrelevant. At his deposition, Leal testified that he frequently smokes marijuana and might have smoked marijuana in Plaintiff's presence in the past. Such evidence is irrelevant and should be precluded as unduly prejudicial.

*Defendants' Opposition*

Defendants argue that courts have long recognized that it is proper to explore drug use/addiction in order to attack a witness's credibility and capacity to observe. In this case, the relevant hospital records state that Plaintiff was suffering from "acute intoxication" and "poly substance abuse." Plaintiff tested positive for cocaine and alcohol in his system. Both drugs and alcohol influence perception and memory. Defendants will not argue that Plaintiff lacks credibility because he is a drug user, rather they will be challenging Plaintiff's account of the incident because he was under the influence of alcohol and drugs at the time of the incident. The evidence is also relevant as it supports the observations and account of the incident that the Officers will describe. The officers will describe Plaintiff as agitated, and will assert that they believed an attack by Plaintiff was imminent. Emergency personnel also observed these behaviors. Evidence of cocaine use corroborates the accounts of the officers and the emergency room personnel. Finally, Plaintiff's blood alcohol level as measured at the hospital shows that Plaintiff lied during his deposition about how much alcohol he consumed. The blood alcohol level also shows that Plaintiff's friend, who will testify, also lied or was mistaken about the amount of alcohol Plaintiff consumed.

Defendants also argue that Plaintiff is seeking damages for pain, suffering, and medical special damages. The hospital records indicate that much of the care Plaintiff received was to treat

2

his "poly substance abuse," and not to treat injuries that resulted from the incident in question. Because Plaintiff was so agitated and aggressive, he was placed in restraints and kept under constant surveillance, which increased the medical costs. Further, cocaine is known to cause brain injuries and seizures, both of which Plaintiff claims as damages. Plaintiff claims he has not been able to work because of the seizures. Defendants argue that they should be permitted to argue that such injuries were caused by his drug abuse, and not by the taser.

*Reply*

In reply, Plaintiff argues that the cases relied on by Defendants deal with eye-witness identifications by drug addicts. However, this case does not involve eye-witness identifications, and even those cases recognized the real possibility of prejudice from such testimony. Further, Plaintiff argues that Defendants have designated no experts who can opine about the effects of cocaine or whether it causes agitation, paranoia, or aggressive behavior. Defendants are relying on general understandings of cocaine, but Defendants arguments depend greatly on how much cocaine was ingested, how long it was being ingested, and whether the user was addicted. Without an expert witness, Defendants' arguments are speculative and unduly inflammatory. Similarly, there is no expert who can testify about what percentage of hospital treatment was due to "poly substance abuse," and what was due to the taser. Treating physician Dr. Meyer will testify that people who undergo brain injuries often behave erratically and may be agitated. Plaintiff's agitation lasted for days, the evidence indicates that Plaintiff had a skull fracture, and there is no evidence that his agitation or any of his injuries or damages were caused by cocaine.

*Discussion*

"In a case . . . where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Boyd v. City & Cnty of San Francisco, 576 F.3d 938, 948-49 (9th Cir. 2009). In *Boyd*, the Ninth Circuit upheld a ruling that allowed evidence that a decedent had been on drugs at the time of a police shooting because the evidence "was highly probative of the decedent's conduct, particularly in light of [the decedent's] alleged erratic behavior . . . ." Id. at 949. It is not uncommon for courts to permit evidence that a plaintiff/decedent was under the influence of drugs or alcohol in order to

explain unusual behavior or to corroborate the officers' version of how a decedent acted. See Turner v. White, 980 F.2d 1180, 1182-83 (8th Cir. 1992) (citing *Saladino* and upholding admission of alcohol consumption because "it was incumbent upon the jury to consider Officer White's actions in relation to all the circumstances of the situation that confronted him. We therefore believe the evidence of alcohol consumption was relevant to the jury's assessment of that situation . . . ."); Saladino v. Winkler, 609 F.2d 1211, 1214 (7th Cir. 1979) ("This evidence tends to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life."); Lopez v. Aitken, 2011 U.S. Dist. LEXIS 16396, *3-*5 (S.D. Cal. Feb. 18, 2011) ("Evidence of Mr. Lopez's intoxication substantiates Defendants' assertions that Mr. Lopez was acting irrationally and unpredictably at the time of the incident, and their claims that Mr. Lopez resisted arrest."); Cotton v. City of Eureka, 2010 U.S. Dist. LEXIS 136270, *19-*20 (N.D. Cal. Dec. 18, 2010) ("The flaw in [plaintiff's] argument is that it overlooks that evidence that the Decedent was under the influence of LSD may be probative of his behavior at the time of the incident."); T.D.W. v. Riverside County, 2010 U.S. Dist. LEXIS 35821, *8-*11 (C.D. Cal. Mar. 11, 2010) (denying reconsideration of admission of intoxication because such evidence "was probative of decedent's erratic behavior immediately preceding and at the time of the shooting . . . ."). That law enforcement officers may not have suspected intoxication of some sort does not make evidence of intoxication inadmissible, especially when there is a dispute as to the plaintiff/decedent's conduct. See T.D.W., 2010 U.S. Dist. LEXIS 35821 at *8-*11 (admitting evidence of decedent's intoxication despite no evidence that the deputies suspected intoxication); see also Boyd, 576 F.3d at 942-43, 949 (upholding admission of drugs in decedent's system, but not mentioning whether the officers suspected intoxication).

     Here, there is clearly a dispute about how Plaintiff was acting just prior to Officer Banuelos's use of the taser. Evidence that Plaintiff had ingested alcohol and cocaine would be relevant to the issue of Plaintiff's credibility and to corroborate the officers' version of events and description of Plaintiff's behavior. See Boyd, 576 F.3d at 948-49; Lopez, 2011 U.S. Dist. LEXIS 16396 at *3-*5; Cotton, 2010 U.S. Dist. LEXIS 136270 at *19-*20; T.D.W., 2010 U.S. Dist.

LEXIS 35821 at *8-*11.  Therefore, it is appropriate for the topic of cocaine consumption to be explored to some degree.  Given the representations made in the briefing of this motion, however, the Court concludes that only a very limited exploration is appropriate.

Neither *Boyd* nor the above District Court cases held that there a requirement that an expert witness be designated in order for evidence of drug or alcohol consumption or intoxication to be admitted.  This is likely due to a recognition that ingestion of intoxicating substances is generally known to alter a persons' perception and behavior to some degree.  The precise degree of alteration, or the precise effects that are likely to be associated with a particular amount of cocaine, however, is not something that is generally known and would require expert testimony.  Consistent with *Boyd* and the above District Court cases, Defendants will be permitted to question Plaintiff about whether he had recently ingested, or was under the influence of, cocaine near the time of the incident.  If Plaintiff denies that he ingested cocaine Defendants will be permitted to admit evidence that the blood tests detected cocaine.[1]  Also consistent with *Boyd*, Defendants will be permitted to argue that the cocaine-use corroborates their version of events or explains their version of Plaintiff's behavior around the time that Officer Banuelos used his Taser.[2]

With respect to Defendants' argument that cocaine ingestion is admissible on the issue of damages, the Court disagrees.  Defendants are requesting that cocaine-use be considered by the jury as a cause for some of Plaintiffs' medical treatment and personal damages.  The Court agrees with Plaintiff that, if Defendant wishes to argue that Plaintiff's cocaine-use caused his injuries and medical expenses, then expert testimony is needed.  The cause of medical injuries and the need for medical treatment are topics that are generally not within the kin of lay witnesses or jurors.  Without supportive medical testimony, arguing that Plaintiff's damages were caused in part by

---

[1] The Court does not have a copy of the blood test results.  The relevance of the test is simply that some amount of cocaine was detected.  Depending on what information is in the results, either the entire document or a "sanitized" document may be admitted as an exhibit.  This issue can be resolved, if necessary, during the course of trial.

[2] Defendants argue that the blood alcohol level detected by the blood test shows that Plaintiff was lying about how much he drank.  It appears to the Court that expert testimony would be needed in order to help quantify or explain the blood alcohol level detected.  That is, it seems likely that an expert would need to opine whether the blood alcohol level detected was consistent with the number of drinks that Plaintiff says he consumed.   Nevertheless, the parties have not briefed this precise issue and the Court does not have a copy of the blood test results.  As such, the Court will not resolve the issue at this time.  If the issue arises at trial, the parties should be prepared to explain their positions in light of the analyses of this order.

cocaine use is too speculative, confusing, and prejudicial. See Fed. R. Evid. 403. Based on the briefing, it is the Court's understanding that there is only a blood test that shows cocaine ingestion. Such evidence is insufficient to make a damages argument. Therefore, Defendants will be precluded from arguing that Plaintiff's ingestion of cocaine caused his damages.

Finally, Defendants do not address Plaintiff's request to exclude witness Leal's tesetimony regarding marijuana use. In the absence of an opposition, the Court will preclude admission of such evidence as unduly prejudicial under Rule of Evidence 403.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion in limine to preclude evidence of drug testing and cocaine ingestion is DENIED, in that evidence of cocaine-use may be admitted (as described above) to corroborate Defendants' version of events and to explain their version of Plaintiff's behavior;[3]

2. For all other purposes, Plaintiff's motion in limine to preclude evidence of drug testing and cocaine ingestion is GRANTED; and

3. Plaintiff's motion in limine to preclude testimony regarding witness Leal's marijuana use is GRANTED.

IT IS SO ORDERED.

Dated:   April 1, 2014

_____
SENIOR DISTRICT JUDGE

---

[3] Plaintiff may prepare and submit any limiting instructions that he believes is warranted by this ruling.